THE CHICAGO UNION TRACTION COMPANY

*v.*

MAURICE BROWDY.

*Opinion filed December 16, 1903—Rehearing denied February 5, 1904.*

1. NEGLIGENCE—*effect where negligence charged is the omission of a duty suddenly arising.*   If the alleged negligence of the defendant's servant is the omission of a duty suddenly and unexpectedly arising, it is incumbent on the plaintiff to show that under the circumstances the servant had an opportunity to discover the facts giving rise to the duty and also an opportunity to perform the duty.

2. STREET RAILWAYS—*right of motorman on approaching horse and wagon standing at side of street.*   A motorman in charge of a car approaching from the rear a horse and covered wagon standing still near the curb, is not required to stop the car nor to assume that the driver will suddenly start up and drive across the track when the car is too close to avoid a collision.

3. INSTRUCTIONS—*each party entitled to instructions on his theory, if there is a basis in the evidence.*   Each party is entitled to correct instructions upon his theory of the case if it has a basis in the evidence, and it is not the province of the court to weigh the evidence in passing upon such instructions.

*Chicago Union Traction Co.* v. *Browdy*, 108 Ill. App. 177, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JONAS HUTCHINSON, Judge, presiding.

JOHN A. ROSE, and LOUIS BOISOT, (W. W. GURLEY, of counsel,) for appellant.

WATERS & JOHNSON, for appellee.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

This is an action on the case brought by the appellee, against the appellant, in the superior court of Cook county, to recover damages for a personal injury.   The declaration contained one count, and alleged that on July 15, 1900, the plaintiff was riding in a wagon drawn by

one horse, along Twelfth street, in the city of Chicago, and that the defendant, by its servants, so carelessly, negligently and improperly drove and managed a certain motor-car then running on Twelfth street that said car ran against said wagon, whereby the plaintiff was injured. The general issue was pleaded, and a trial before the court and a jury resulted in a verdict and judgment for $2500 in favor of appellee, which has been affirmed by the Appellate Court for the First District, and a further appeal has been prosecuted to this court.

It appears from the evidence that the accident occurred on the afternoon of Sunday, July 15, 1900; that the appellee, who was in the candy business, used a one-horse covered wagon with which to deliver his goods; that he left the horse and wagon standing near the curb upon the south side of Twelfth street, in front of the store of a customer, upon which street the appellant operated a double track street railway; that after supplying his customer he got into his wagon and started to the place of business of another customer on the north side of the street and a little east of the place where his horse and wagon had been standing; that he drove east on the south track of appellant a few feet and then turned north across the tracks; that just as he turned, the rear of his wagon was struck upon the south track by an east-bound motor-car, to which was attached a trailer. The appellee testified that he did not see the car when he got into the wagon; that before he got into the wagon he saw the car standing on the south-west corner of Halsted and Twelfth streets, which point, the evidence shows, was in the neighborhood of two hundred feet west of where the horse and wagon were standing. He further testified that he drove upon the south track, went east ten or fifteen feet and then turned north, when the car struck the rear of the wagon and capsized it.

The appellant requested the court to give to the jury the following instruction, which request was refused:

"The court instructs the jury that if they believe, from the evidence in the case, that while the defendant and its servants were (if they were) exercising ordinary care, the plaintiff, at the time and place of the injury, suddenly and unexpectedly, and without the knowledge of the defendant, drove his wagon across and upon defendant's track and thereby placed himself in a position of danger, then, in order to charge the defendant with a duty to avoid injuring him, the plaintiff must show, by a preponderance of the evidence in the case, that the circumstances were of such character that the defendant's servant or servants had an opportunity to become conscious of the facts giving rise to such duty, and a reasonable opportunity, in the exercise of ordinary care and caution, to perform such duty. And if the jury further believe, from the evidence, that the facts as shown by the evidence did not charge the defendant and its servants with a duty as thus defined, or if the jury believe, from the evidence, that the defendant and its servants did not have a reasonable opportunity, in the exercise of ordinary care, to perform such duty as thus defined, then they should find the defendant not guilty. And if the jury believe, from the evidence in the case, that the plaintiff suddenly and unexpectedly drove his wagon across and upon the track, in front of the car of the defendant which occasioned the injury, and that the servant or servants in charge of such car did all that could be done, in the exercise of ordinary care, to avoid injuring and damaging him, then the plaintiff cannot recover in this case, and the jury should find the defendant not guilty."

The theory of the appellant was, that the appellee, without notice to the motorman, suddenly drove upon the track directly in front of an approaching car, and that the motorman did not have time, after the appellee drove upon the track, to stop the car before the same came in contact with the wagon of the appellee, and it is

contended that the instruction properly stated the law applicable to such state of case, and that it was error for the court to refuse to give such instruction to the jury. The law seems to be well settled that where the alleged negligence of a servant consists of an omission of duty suddenly and unexpectedly arising, it is incumbent on the plaintiff to show that the circumstances were such that the servant of defendant had an opportunity to become conscious of the facts giving rise to the duty, and a reasonable opportunity to perform it, before the master can be held liable. (Booth on Street Railways, sec. 105; *M. & F. Pass. R. R. Co.* v. *Kelley*, 102 Pa. St. 115; *Fenton* v. *Second Avenue Railroad Co.* 126 N. Y. 625; *Rack* v. *Chicago City Railway Co.* 173 Ill. 289.) The evidence of appellant tended to show that the horse and wagon of appellee were left standing upon the street in such position that its car could safely pass the same, and that it remained in such position until the car was so near the horse and wagon that it was impossible for the motorman to stop the car before it would come in contact with said wagon if it was driven upon the track, when the appellee, without warning, turned upon the track. It is clear that negligence cannot be imputed to the motorman because he did not stop the car while the horse and wagon were standing near the curb and out of the line of contact with the car. The peril to appellee did not commence and become apparent until he turned upon the track. Then, and not until then, was the motorman required to act. To hold that it was the motorman's duty to stop the car because the horse and wagon were standing near the track, although sufficiently distant to permit the car to pass in safety, would be to impose upon the appellant a duty not imposed upon it by law. Neither was the motorman required to assume that when his car was too near the horse and wagon to permit him to stop his car before it would strike the wagon, the appellee would suddenly and without notice drive upon

the track. He was only required to operate his car with reference to perils which reasonably might be expected to occur. To require him to run his car with such caution as to guard against unusual or extraordinary perils would be to require him to so operate his car as to prevent the practical operation of the road. The instruction correctly stated a principle of law which was applicable to the case, the principle contained therein was not given to the jury in any other form, and the instruction should have been given.

It is, however, said, that there was no evidence upon which to base said instruction, and for that reason it was not error to refuse it. We do not so understand the record. Henry Vornkahl, the motorman, testified: "In July, 1900, I was in the employ of the Union Traction Company. I was operating a car on that date on Twelfth street. I remember an accident by which my car ran into a covered wagon. That occurred just a little way east of Halsted street; I should think about one hundred and thirty or one hundred and forty feet. I didn't measure it. I stopped on both sides of Halsted street. After leaving Halsted street I went right down the street. There was no obstruction or anything in the way east of Halsted street. There was a wagon standing out at one side of the track and I didn't see no driver get into the wagon. The wagon was standing there. It was a one-horse covered vestibule confectionery wagon. It was standing when I saw it. The horse was facing east—the same way the car was going. The wagon was standing right near the curb. It is a narrow street—sixty feet wide. There was a show for me to go by the wagon. The wagon was standing. I seen it down the street. I seen the wagon, and when about forty feet of the wagon the horse stepped over north,—that is, he turned to the left. I rang the bell right along, and it didn't make any difference. He didn't look. I tipped them over. I stopped my car with the brake. It was a hand brake. I was standing

on the front of the car. I commenced to apply the brake as I seen the man pull over. He was then something like forty or fifty feet away. I did not succeed in stopping the car until I hit him. The car ran about four or five feet after it struck him. There were two cars in that train. When I struck this wagon I tipped it over—turned it over on the right side, so that the right side of the wagon was down against the ground. After the collision the wagon lay in the street right beside the car—on the north side of the car."

Olaf Lindstrom, the conductor in charge of the motor car, testified: "I am a conductor in the employ of the Union Traction Company. I was in its employ in July, 1900. I was operating a car on West Twelfth street that day. I remember an accident to Mr. Browdy. It was a covered candy wagon. The wagon, when I first saw it, was on the south side of the street. I was conductor on the first car—the motor-car. There were two cars in that train. When I first saw this horse and wagon I was on the rear platform. My car was east-bound. We had left Halsted street. It was a covered, one-horse wagon. It was facing east. It was standing between the curbing and the tracks. Well, as we had left Halsted street, about—well, it was about, well, say fifty to seventy-five feet, I looked out on the side and saw a wagon there. That was all there was to it; and the motorman he was ringing his gong. As he came up closely he pulled right in front of it. The motorman put on the brake as soon as he see he was going to pull across the tracks, and, of course, the car struck the hind wheel. He made just a little circle. I should think the car was about thirty feet, or something like that, at the time he commenced to make the circle. The wagon was not traveling along on that track. The car struck the left hind wheel of the wagon. It tipped the wagon over. The wagon lay on the ground on the right side of the wagon. The car stopped immediately. The front end of the car was clear of the

wagon, so the car could have gone by, but it stopped probably five feet in front of the rear wheel of the wagon. I saw the horse when it turned. He tapped the bell quickly. You can hear the motion of the brake when he sets it quick. The car was stopped in about twenty-five feet, I should think, from the time he applied the brake."

Walter Lindberg, the conductor in charge of the trailer, testified: "I am a conductor on a street car, in the employ of the Chicago Union Traction Company. I was in the employ of that company in July, 1900. I was operating a car on West Twelfth street in that month. I remember the occasion of a collision with a wagon of Maurice Browdy, the plaintiff, just this side of Halsted street, in that month. I was a conductor then. There were two cars in that train. I had charge of the rear car. I saw the wagon before the collision. When I first saw it, it was on the south side of the street. It was standing still at that time. It was about two feet from the curb. The horse was facing east. I did not see a man about there. The wagon was standing there when we were going east, and, of course, I was on the rear platform at that time, and when the car was almost up to the wagon the wagon started and turned right in front of the car. At the time the wagon started up the train was about fifty feet away from the wagon. The people on the car saw the horse was coming around toward the track. The motorman started to ring the gong, and the people hollered, and he hollered, and he started to set the brake. The car struck the wagon after the wagon turned into the track. The wagon was not on the track going east at that time. When it crossed, it crossed from the south to the north side,—right across. The car struck the left hind wheel. At the time of the collision I was on the rear platform and helped stop the car, and as soon as the car was stopped I jumped off in front. I was on the rear platform, and I started to set the brake when I saw the horse coming toward the track."

Jesse Steipp, a passenger, testified: "I live at 4067 Dearborn street. I am a janitor. I remember a collision on Twelfth street, east of Halsted street, in July, 1900. I saw it. I was on about the third or fourth seat in the front car. The car was moving east. I was on the left side of the car—that is, the north side. I saw the man who was driving the wagon at that time. I do not recognize him now. There was a gray horse on the wagon. It was going north when I first saw it. The wagon was to the right of me when I saw it. The horse was about three feet from the track when I first saw it. I guess I was about thirty-five or forty feet from the horse when I first noticed it within three feet of the track. At that time the gripman·was ringing the bell and put on the brake, and the wagon was going across, and the car hit the hind wheel and turned him over. After·the wagon was turned over, the car ran about three or four feet, I think. When the car stopped, the front end of the car was about three or four feet east of the wagon."

Mrs. James Rupp, also a passenger, testified: "I remember an accident occurring on a street car on Twelfth street, near Halsted, in July, 1900. I was sitting on the first seat of the car. The car was going east. My husband was with me. He sat on my left. He was on the outside. The motorman was on the platform. That is all I remember. There was nobody on the seat on the other side of the door. When I first saw this wagon the horse was on the track, starting to cross over to the other side. The horse's head was turned north. I saw the horse on the track—the whole horse was on the track. The wagon at that time was on the south side of the track. The car was thirty to forty feet away when I saw the horse and wagon in that condition. The horse attracted my attention first. Just as soon as I see the horse on the track the motorman sounded the gong and turned the power off as quick as he can with both hands. I don't know that he did that with both hands, but he

used both hands.  The car went slower.  I did not hear any hollering until the car was stopped.  At the moment I was excited myself.  I don't just remember.  The car struck the left wheel on the back of the wagon.  It tipped the wagon to one side—to the right side of the wagon.  The car stopped.  When the car stopped it was even with the wagon."

The evidence, as shown by the foregoing excerpts from the testimony of the witnesses called by the appellant, was amply sufficient to require the submission to the jury of the issue covered by the instruction.  While the evidence was conflicting, it was not the province of the trial court, by reason of that fact, to withdraw the issue thus made by the appellant, from the jury.  Each party has the right to have the jury instructed upon his theory of the case, if it has a basis in the evidence upon which to rest.  In *Chicago, Rock Island and Pacific Railway Co.* v. *Lewis*, 109 Ill. 120, on page 134 it was said:  "It is not necessary the court should be satisfied the hypothetical case stated in an instruction is fully sustained by the testimony before it would be required to submit it to the jury.  That would practically include the services of a jury, and would debar a party of the constitutional right to have his cause tried by a jury.  The court might take one view of the evidence, and yet, if submitted, a jury might reach a different conclusion, and it is for that reason a party has the right to have submitted any hypothetical case the testimony tends to sustain, otherwise the court might try the cause without the intervention of a jury in the first instance."

We are of the opinion said instruction was vital to the proper presentation of the defense sought to be interposed by the appellant, and that its refusal was reversible error.  The judgments of the Appellate and superior courts will therefore be reversed and the cause remanded to the superior court for a new trial.

*Reversed and remanded.*