## North Chicago Street Railroad Company v. Patrick H. O'Donnell, Administrator, etc.

### Gen. No. 10,880.

1. PROXIMATE CAUSE—*when alleged negligence is not the, of an accident.* Held, in this case, that the evidence leaves no reasonable doubt that the proximate cause of an injury to a passenger who was riding upon the platform of a street car, was not the speed of such car, but the sudden turning of unmanageable horses in front of such car, which up to that moment had a clear way upon the track.

2. NEGLIGENCE—*what essential to charge motorman with.* To charge a motorman with negligence, it must appear that he had notice of the agency which caused the injury, or contributed thereto, long enough to enable him to form an intelligent opinion as to how the accident and injury might be avoided, and to apply the means.

3. NEGLIGENCE—*burden of proof to establish.* The burden of proof is upon the plaintiff to establish a charge of negligence made in his declaration.

4. REVERSAL—*when, must be as to all, notwithstanding all do not appeal.* A judgment in an action on the case is a unit, and where erroneous as to one defendant, it must be reversed as to all.

Action on the case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1902. Reversed. Opinion filed January 19, 1904. Rehearing denied July 12, 1904.

Statement by the Court. This is an action to recover damages for alleged negligence resulting in the death of appellee's intestate. The latter was at the time of the accident a passenger upon an electric car operated by appellant. He was smoking, and was standing on the front platform in a vestibule, directly behind the motorman. The car was going west in the early morning on Chicago avenue. ·A wagon drawn by two horses and belonging to defendant Patrick Mulcare, was approaching upon the eastbound track. When the car and team were not far apart one of the horses attached to the wagon sprang in front of the car in such a way that the tongue of the wagon crashed into the vestibule of the car inflicting the injuries which later caused the death of appellee's intestate. ·

The court adjourned for the day before the jury returned their verdict and they were authorized to bring in a sealed verdict, which they did about midnight and the jury separated. The next day the jury came into court, and the verdict was opened. It read as follows: "We, the jury, find the defendants guilty and assess the plaintiff's damages at the sum of $5,000 as follows : The North Chicago Street Railroad Company to be assessed the amount of $1,500 and Patrick Mulcare the remaining $3,500." The court refused to receive this verdict, and over the objection of the defendant sent the jury back instructing them that they could not " divide the damages between the two defendants," and that they were at liberty to find such new verdict as they should think proper under the evidence and the instructions of the court without any reference whatever to the verdict they had endeavored to find and which had been actually returned into court. The jury subsequently returned a verdict finding the defendants guilty and assessing the plaintiff's damages at the sum of $5,000, upon which the judgment was entered from which this appeal is prosecuted.

It appears that the defendant Mulcare, after the case had been once dismissed against him, was again served after the filing of the amended counts, but did not appear and his default was not entered. He does not join in this appeal. At a former trial the jury were unable to agree.

JOHN A. ROSE and LOUIS BOISOT, for appellant; W. W. GURLEY, of counsel.

C. H. POPPENHUSEN and J. L. McNAB, for appellee; S. S. GREGORY, of counsel.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

It is strongly urged by appellant that the verdict is not supported by the evidence. Appellee's contention is that " the accident could have been prevented by the use of ordinary care on the part of the motorman in slackening speed when approaching a young team frightened at the approach of the car." There is evidence introduced by appellee tending to show that the horses were "prancing" as they approached. One of appellee's witnesses states that the " street car was from one hundred to one hundred and fifty feet from the horses when I first saw the horses prancing and shying;" and two others of appellee's witnesses state that the horses " were prancing " and that one of them was " bobbing his head." The same witnesses state that the car was traveling fast and making a noise. Appellant's witnesses deny that the car was running at more than an ordinary rate of speed not exceeding six miles an hour, and it appears from testimony for appellee, as well as for appellant, that the team approached on the east-bound track until within " ten or fifteen feet from the car," when the horses got frightened and " switched" over in front of it, the collision occurring immediately thereafter. It is doubtless possible, as claimed by appellee's attorneys, that had the motorman slackened the speed to such an extent that he could have stopped the car when he saw the horses get on the track about fifteen feet in front, the accident might not have occurred. It is frequently easy to see after the event how an accident might have been averted. In this case, however, it might not have been wholly avoided even had the motorman been able to stop his car. If, as appellee claims, the team was frightened, the horses might still, with like disastrous results, have dashed into the car which they were approaching. The evidence leaves no reasonable doubt

that the proximate cause of the accident was not the speed of the car, but the sudden turning of the horses directly in front of the car, which up to that moment had a clear way upon its track.

The contention seems to be that the motorman was guilty of negligence in failing to anticipate that the horses might get in his way and in not checking his car in time to avert an accident. There is evidence, as we have said, tending to show that the horses were " prancing and shying," when still from a hundred to a hundred and fifty feet away. But this fact, if fact it was, did not indicate, nor does it appear, that the team was not under control of the driver. The horses were still trotting forward with the wagon, they were not running away, and the motorman had a right to assume that the driver could and would keep them under his control or turn them away from the track if they were fractious. It is conceded that the motorman was ringing his. bell, and the approaching team was in a place of safety. The conduct of the team is not shown by the evidence to have been such as to indicate danger from them to the car. It was early morning, the street was free from other vehicles and there was apparently plenty of room on the street. The accident resulted from a sudden turn of the horses toward the approaching car when the motorman might reasonably suppose · that if they were frightened they would go in the opposite direction. Whether the horses were young or were frightened by the car or by something .else, or whether they were frightened at all, are mere matters of inference as to which there is no direct proof. The evidence is undisputed that the deceased was standing behind the motorman, where he had a full view in front. He himself apparently anticipated no danger from the team for he maintained his position. To charge the motorman with negligence he should have had notice at least long enough to enable him to form an intelligent opinion as to how the accident and injury might be avoided and apply the means. C. B. & Q. R. R. Co. v. Johnson, 103 Ill. 512; U. S. Express Co. v. McCluskey, 77

Ill. App. 56, 58.   There is no evidence and it is not claimed that the car could have been stopped even if moving at an ordinary and usual rate of speed, in time to avoid the accident, after the horses got in front and the danger became obvious.   " Where the plaintiff's own evidence shows that the accident was due to a cause beyond the control of the carrier, as the presence of *vis major*, or the tortious act of a stranger tending to produce the accident, no such *prima facie* case is made out as will throw the burden upon the carrier of showing it was not guilty of negligence," merely because the accident occurred.   Chicago City Ry. Co. v. Rood, 163 Ill. 477, 482.   The burden is upon the plaintiff of making good the charge of negligence against appellee. It is said in Pfeiffer v. Chicago City Ry. Co., 96 Ill. App. 10, 12, " the extreme precaution of running cars so cautiously as to avoid the unusual or extraordinary, of which there is no notice, would prevent the practical operation of the road and is not required."   And where no negligence is apparent and an injury occurs it belongs to that class designated as accidental.   See also Ill. C. R. R. Co. v. Hobbs, 58 Ill. App. 130–133.  We are of opinion that there is no evidence in this case tending to show that the motorman was not exercising that degree of care which caution and prudence required to prevent an accident which he could not reasonably have anticipated as likely to occur. Libby v. Maine Central R. R. Co., 85 Me. 34.   The consequences of the accident are deplorable, but so far as appears it was not due to negligence on the part of appellant, and under these circumstances the law cannot hold the latter liable.

In view of this conclusion the judgment will be reversed, with a finding of facts as to appellant only.   The other defendant has not prosecuted the appeal but the judgment is a unit against the defendants, and must be reversed as an entirety, without, however, affecting appellee's rights to again prosecute his claim against the defendant Mulcare. Seymour v. Richardson Fueling Company, 205 Ill. 77.

*Reversed.*

Mr. Justice STEIN took no part in the decision of this case.