**A. Sox, Appellee, v. Chicago City Railway Company, Appellant.**

**Gen. No. 14,982.**

NEGLIGENCE—*what essential to establish, as against motorman in charge of car colliding with wagon.* To charge a motorman with negligence in a case where it appears that the car upon which he was employed collided with a wagon, it must be shown that such motorman had notice of the danger "at least long enough before the injury inflicted to have enabled him to form an intelligent opinion as to how the injury might be avoided and apply the means."

BAKER, J., dissenting.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. ROBERT W. WRIGHT, Judge, presiding. Heard in this court at the October term, 1908. Reversed. Opinion filed March 17, 1910.

WATSON J. FERRY and WEST, ECKHART & TAYLOR, for appellant.

GOLDSMITH & MORRIS, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is an action for personal injuries in which the plaintiff recovered a judgment for $1,020 against the defendant and the latter appeals.

It appears from the evidence that the plaintiff was riding in a covered wagon driven by a fellow employe of a third person and was engaged in selling merchandise carried in the wagon. The plaintiff was salesman. At the time of the accident the wagon had been standing about fifteen minutes on the west side of Halsted street about a hundred feet north of Root street, Chicago, waiting the return of the driver. The latter testifies that when he returned to the wagon he looked southward and saw a north-bound street car operated by defendant standing on the the south side of Root street. He says he looked to the north also and then started to drive from the west side of Halsted street in a northeasterly direction across the double tracks of the defendant on that street to the opposite or east side of the street. The evidence tends to show that at the time the wagon started to cross from near the west curb of Halsted street there were a number of teams or wagons going south in front of a south-bound car on the westward or southbound track, and the driver of the wagon in which plaintiff was riding drove east through this line of conveyances. In the meantime defendant's north-bound car was moving north on Halsted street on the eastward of the two tracks. The distance between the east rail of the westward or south-bound track and the west rail of the eastward or north-bound track was about five and a half feet. When therefore the plaintiff's wagon broke through between or in front of the wagons on the west or south-bound track the horse's head was not more that about five feet from the west rail of the other or north-bound track on

Sox v. Chicago City Ry. Co., 153 Ill. App. 265.

which defendant's car was moving toward it. The testimony of the motorman of the car is to the effect that he first saw the horse just as it reached the west rail of the east or north-bound track in front of his car, and that he at once applied the brakes and did all he could to stop the car. The wagon meanwhile was crossing the track diagonally and when nearly across was struck on its right hind wheel by the car and shoved a few feet, overturning it and throwing the plaintiff to the ground, causing the injuries complained of.

The material question is whether the accident was caused by negligence of the defendant's motorman. The plaintiff's claim in this respect is that the motorman after crossing Root street and until his car struck the wagon in which plaintiff was riding, was engaged in conversation with passengers, and paying no attention to his car. This contention is based upon the testimony of a single witness, a peddler, whose presence on the car at the time is questioned by other witnesses. He stated, "The motorman was looking in the car. He spoke all the time. I don't remember just exactly what conversation we had at that time, what we spoke. He was looking at us in the car. There were many men on the front platform." Upon cross-examination he says the motorman "looked out in front and looked back. How often he looked out in front I don't know; he looked out often at the people and he looked at the car and looked at the people. I think he did look out in front when the car started up." To the question, "Did he look out in front after that?" he answered: "No, sir, that is what I don't think, I don't think he did. He only looked out when the car first started up, and then he turned around and was talking to the passengers and didn't look out ahead after that. I was looking out in front most of the time. I was standing on the right of the motorman on the east side. I was right in the step in the corner window, you see." He states that when the

horse first stepped on the track in front of the car he "could not exactly place" the distance between the horse and the approaching car, but it was "about 100 or 150 feet." Defendant's witnesses all place the distance from ten to fifteen feet.

A passenger on the car in question called by defendant testified that the driver of plaintiff's wagon drove across the south-bound track between two of the teams on that track, "licked up and drove in between them," and that when the horse stepped on the track in front of defendant's car, it was in his judgment "about ten feet away * * * from the front end" of the car, that the car struck the wagon, "and moved about ten feet, not any more than that after it struck; then it came to a stop." He testifies that the gong was ringing "all the time, not in one particular place, he rang it all the time down there, because there was so many teams around," that "before the accident occurred the motorman was looking straight ahead. From the place where the car made its last stop the ringing of the bell was just the same as before he made the stop, he was ringing the bell all the time and kept ringing it from that point up to the time of the collision." This testimony is corroborated in all essential particulars not only by the conductor and motorman of the car, but by four other apparently disinterested witnesses, one a police officer, and it is not contradicted. One of defendant's witnesses, a farmer from the country who "had been at the stock show in the Stock Yards" and was on the car expressly states that "the motorman coming up from Root street was looking out in front. He did not look around behind and talk to the passengers, that I know." If uncontradicted testimony of witnesses who appear to be honest, impartial and truthful is to be given credence, then it must be found from the evidence, first, that the driver of the wagon drove across the west track going between wagons on the south-bound track, "licked up" his horse and started to

cross the north-bound track in front of and without looking out for the approaching north-bound car; that when his horse stepped on the track in front of said car the latter was from ten to fifteen feet away; second, that before and during the time the car had been approaching from Root street, the motorman was continuously ringing his gong and that when he saw the horse coming on the track in front of him he "commenced to put on his brake" and endeavored to stop the car; and third, that the greatly preponderating evidence tends to show the motorman was not neglecting his duties and was not turning around to look at and talk with passengers between Root street and the place where the collision occurred.

We agree with plaintiff's counsel that in this case it is "immaterial whether or not the driver Wolkoff was guilty of contributory negligence, and the sole question to be determined   *   *   *   is whether or not the motorman in charge of the car was guilty of the negligence which caused the injury." It is argued that "after the wagon driver had indicated his purpose of crossing the track in front of the car and the danger of collision became known to the motorman, it became the duty of the latter to slacken the speed of the car upon the first intimation of said danger." There is no evidence, however, tending to show first that the wagon driver did indicate such purpose to the motorman or any one else except by driving through the line of wagons on the nearest track; nor second that the danger did become known to the motorman until the horse appeared close to the track upon which the defendant's car was approaching and was already apparently within ten or fifteen feet of the car. The evidence that the motorman did then immediately apply the brakes and endeavor to stop the car is not contradicted. It appears to have been actually stopped within a distance not exceeding about twenty-five feet. It is undoubtedly true that a driver of a wagon upon a public street where his wagon is in plain

view of an approaching car has a right to rely upon
the exercise of ordinary care by a motorman to pre-
vent accident and injury. But he owed the plaintiff
and his driver only ordinary care (Wilson v. C. C. Ry.
Co., 133 Ill. App. 433-437), and to charge such motor-
man with negligence in a case like that at bar, he must
be shown to have had notice of the danger "at least
long enough before the injury inflicted to have en-
abled him to form an intelligent opinion as to how the
injury might be avoided and apply the means." C.
B. & Q. R. R. Co. v. Johnson, 103 Ill. 512-520; U. S.
Exp. Co. v. McCluskey, 77 Ill. App. 56-58. There is,
as we have said, no evidence in the case at bar that
the motorman did have such notice. Negligence is
not a mere matter of conjecture. It must appear by
evidence. The motorman testifies he did not see the
horse and wagon until it was right in front of him,
and there is corroborating testimony. A witness who
was driving south on the west track states that he did
not notice the wagon until it pulled "diagonally across
the teams in front of me." Another witness testifies,
"the very first I saw of the horse and wagon that
afterwards came into collision with the car, it was
coming over from the south-bound track over to the
north-bound track." At that time the horse must
have been close to the north-bound track, the distance
between them being only about five feet. The police
officer on the car says that the first he noticed the
horse and wagon it was "coming through the proces-
sion that was on that south-bound track and trying
to get across the street." There is nothing in the
evidence, so far as we discover, tending to show that
in the exercise of ordinary care the motorman ought
to have seen the horse and wagon in time to avoid
the accident. It occurred, not at a street crossing
but at or near the middle of the block where the motor-
man so far as appears had no reason to assume that
a horse and wagon would start suddenly from behind a
procession of wagons going south on the other track

and endeavor to cross in front of the car.   In C. U. T. Co. v. Browdy, 206 Ill. 615-618, it is said that a motorman is "only required to operate his car with reference to perils which reasonably might be expected to occur.   To require him to run his car with such caution as to guard against unusual or extraordinary perils would be to require him to so operate his car as to prevent the practical operation of the road."

For the reasons indicated the judgment of the Superior Court must be reversed.

*Reversed.*

MR. JUSTICE BAKER dissenting.