# Thomas J. Healy, Administrator, Appellee, v. Chicago City Railway Company, Appellant.

## Gen. No. 15,887.

1. NEGLIGENCE—*when collision not result of.* Negligence cannot be imputed to a motorman where the collision results, not at a street intersection, from the act of the driver of a vehicle suddenly driving his horse upon the track in front of the approaching car. The motorman is not bound to anticipate such an occurrence and keep his car in such control as to avoid a collision so rendered imminent.

2. CONTRIBUTORY NEGLIGENCE—*when person driving across street car tracks guilty of.* *Held,* under the evidence, that a driver who undertakes, not at a street intersection, to drive upon street car tracks in front of an approaching car is guilty of such contributory negligence as will bar a recovery.

Action in case for death caused by alleged wrongful act.    Appeal from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed with finding of facts. Opinion filed October 4, 1911.

WEST, ECKHART & TAYLOR and WATSON J. FERRY, for appellant.

WOLFNER, HEALY & YOUNG and THOMAS J. & DANIEL M. HEALY, for appellee.

MR. JUSTICE GRAVES delivered the opinion of the court.

On February 26, 1908, one William J. Verburg died as the result of injuries received by him two days before in a collision on 39th Street just west of Vernon avenue in Chicago, between a street car of appellant and a wagon in which the deceased was riding. This is a suit by appellee, as administrator of the estate of William J. Verburg, for damages sustained by the heirs and next of kin of deceased. The judgment in the court below was for the appellee for the sum of $2,000.

The proof shows that 39th street runs east and west; that Vernon avenue runs north and south; that the north end of Vernon avenue opens into, but does not cross, 39th street; that on the north side of 39th street, close to the curb, and 28 feet west of where the west line of Vernon avenue would, if extended north, intersect with the north line of 39th street, there was on the day of the accident a watering trough; that between the watering trough and the north rail of the street car track that ran east and west along 39th street, there

was a space fourteen feet and ten inches in width; that when the car of appellant that was involved in the accident was approaching Vernon avenue from the east, the horse of the deceased stood at the watering trough, drinking; that the horse faced in an easterly or northeasterly direction; that the wagon to which the horse was hitched stood in a westerly or south-westerly direction from the horse and was loaded with mouldings; that the body of the wagon projected about two feet back from the hind wheels of the wagon and the mouldings projected about two feet back of the back end of the body of the wagon.  There is a controversy as to whether the wagon and the load on it, as it stood there, was far enough from the street car track to permit the car to pass without touching any part of it, but the preponderance of the evidence is that there was ample room for the car to so pass.

In the view we take of the case, it is unimportant whether the wagon, as it stood there, was far enough from the track to clear the car or not.  The evidence further shows that, as the car approached Vernon avenue, it was running at a "good speed, as fast as usual;" that the motorman was constantly sounding his bell; that when the car had approached to within about one hundred feet of the watering trough, he sounded the bell violently; that the deceased, who was then sitting on the wagon, looked up, and, although he saw the car approaching, he immediately turned his horse to the right and urged him across the street car track immediately in front of the approaching car; that when the horse had crossed the track and the front wheels of the wagon were on the track, the car collided with the wagon and the deceased was thrown to the ground, and received the injuries that resulted in his death; that when the deceased started to turn across the track, the motorman turned off the power, put on the brakes, sanded the tracks and stopped the car in the shortest possible distance in view of the rate

of speed at which he had been approaching, but not in time to avert the collision.

The evidence further shows that between the car and the watering trough there was ample room for the horse and wagon to stand or be driven east in safety, and that, even if the rear end of the wagon or load was on the track while the horse was drinking, it would have been taken out of danger of collision, if the horse had been driven east a very few feet. The location of this collision was not at the intersection of streets crossing each other, where the appellant and all others have equal rights to the use of the streets, but was at a point where appellant had a paramount right to the use of so much of the street as was covered by its tracks. Hewlett v. Brooklyn Heights Ry. Co., 71 N. Y. Supp. 531. While it is true that appellant in the exercise of that paramount right would not be justified in running its car at a high and dangerous rate of speed, or to run down a person who was on its tracks, or was likely to go on its tracks, it had the right to run it at an ordinary rate of speed with reference to perils that were apparent or that might reasonably be expected to occur, and was not called upon to stop the car or slacken its ordinary speed until a necessity for so doing became apparent. Rack v. C. C. Ry. Co., 173 Ill. 289.

There was absolutely no evidence in this case of anything to indicate to the servants of appellant that the deceased was about to turn his horse to the south and drive across the track until he started to do so, and then the car was so close to him that it was impossible to stop it in time to avoid the collision. The motorman was not bound to assume from the fact that the horse and wagon were standing near the track, but out of line of contact with the car, that after he had approached so near that it would be impossible to stop the car, the deceased would suddenly turn his horse and attempt to drive across the track in front

of the approaching car.  Negligence cannot be imputed to the motorman on that state of facts.  C. U. T. Co. v. Browdy, 206 Ill. 615; Bloomington & Normal Ry. Co. v. Koss, 123 Ill. App. 497.  Even if the conduct of the motorman had been negligent, that would not have excused the deceased from the duty to exercise ordinary care for his own safety, and that he certainly did not do.  He saw the car coming towards him at a distance of not more than one hundred feet and at a "good speed."  He had ample room to stay where he was or drive east on 39th street and be safe.  Notwithstanding these facts, he deliberately turned across the track in front of the car, and was injured, as he must have known he inevitably would be, unless the motorman should be able to stop his car in time to avert it.

The evidence, instead of showing due care on his part for his own safety, shows the most reckless disregard of manifest danger.  It would be hard to conceive a state of facts showing more clearly contributory negligence.

The motion of appellant, made at the close of all the evidence, to instruct the jury to find appellant not guilty, should have been allowed and the instruction given.

Other errors have been assigned and argued, but as we see no reason for remanding the cause, it is unnecessary to dispose of them.

The judgment of the court below is reversed without remanding the case, with the finding of facts to be incorporated in the judgment that the deceased, appellee's intestate, was guilty of contributory negligence.

*Judgment reversed with finding of facts.*