## John D. Casey, Administrator, Appellee, v. Grand Trunk Western Railway Company, Appellant.

### Gen. No. 15,964.

INSTRUCTIONS—*must not ignore defense.* An instruction which embodies the theory of the defense should not be refused and the refusal of such an instruction is error if its contents are not substantially contained in another or other instructions given.

Action in case. Appeal from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed and remanded. Opinion filed October 20, 1911.

KRETZINGER, ROONEY & KRETZINGER, for appellant.

JOHN H. LALLY, for appellee.

MR. PRESIDING JUSTICE BALDWIN delivered the opinion of the court.

This was an action brought against appellant, and Esch Bros. & Rabe Ice Company in the Superior Court

of Cook county to recover damages for personal injuries resulting in the death of plaintiff's intestate, a lad of nine and one-half years, on account of the alleged negligence of defendant railway company in the operation of one of its locomotive engines, while plaintiff's intestate was lawfully upon said railroad, with the knowledge, consent and permission of the defendant.

A jury trial was had resulting in a verdict and judgment against appellant for $1,999.

The declaration contains five counts, the first alleging that on August 27, 1904, the railway company was possessed of, and operated a certain railroad extending through a part of the city of Chicago, crossing certain, and passing certain other, public highways; and, also was possessed of, and operated a certain locomotive engine and car attached; that the engine and car were operated by the railway company; that the ice company was at the time engaged in the business of selling ice to the public from railroad cars standing upon one of its tracks, commonly called a side track; that for a long time prior to the accident, large numbers of the public customarily crossed over the railroad at the point where the accident occurred, to said sidetrack, for the purpose of purchasing ice from the ice company, with the knowledge, consent, permission and invitation of the railway company; that it was the duty of the railway company to use proper care and warn persons of the approach of locomotives, which it failed to do; and, while plaintiff's intestate was lawfully upon said railroad, with the consent and at the invitation of the railway company, for the purpose of buying ice from the ice company, while using due care for his own safety, the defendants, by their servants, carelessly and negligently failed to keep proper lookout or warn plaintiff's intestate of the approach of said engine and car; that by reason of such neglect plaintiff's intestate was

run into by said car and engine with such force that he died from the injuries received.

The second count is the same as the first, except that it sets out a city ordinance governing the speed of trains, then in effect, and charges that at the time of the injury the railway company was running the locomotive engine and car at a greater speed than permitted by the ordinance.

The third count is the same as the first, except that it alleges that at the time of the accident there was in force in the city a certain ordinance requiring every corporation, owning, or operating a steam railroad within its limits, to construct and maintain walls, fences, gates, signal bells, and other safety appliances at such places, with reference to its tracks, as directed by the mayor and commissioner of public works; that the place where the accident occurred was one where the railway company should have had a substantial wall or fence, in compliance with said ordinance, but that the company failed to do this, and, as a result of such negligence, the engine ran into plaintiff's intestate with such force and violence that because of the injuries received he died, on September 1, 1904.

The fourth count is the same as the first, except that it sets forth an ordinance of the city of Chicago, in force at the time of the accident, requiring bells to be rung continuously while running within that part of the city; that it was the duty of the railway company to comply with this ordinance; that by reason of its negligence to so comply with it, and ring its bell continually, the plaintiff's intestate met with the injuries resulting in his death.

The fifth count is the same as the first, except that it alleges that there was a certain team roadway running along parallel with the railroad track, and that along said teamway and across the said railroad were the only ways provided by defendant and used by the

public for ingress and egress for the public to said ice market; that said team roadway, at the time of the accident, was covered with teams and wagons hauling ice to and from the freight house on the sidetrack, thereby making it dangerous for plaintiff's intestate to use said team roadway in going to or from the said ice market.

A demurrer of the ice company was sustained so that the case went to trial only against the railway company.

Appellant seeks a reversal of the judgment against it, contending (1) that the deceased was guilty of want of due care, which bars a recovery in this action; (2) that the jury were not justified in finding appellant guilty of negligence; (3) that decedent was, at most, an implied licensee upon the track, and the only duty owed him by appellant was to refrain from wantonly and wilfully injuring him, and that there was neither allegation nor proof of such misconduct; (4) that the court erred in refusing to give the jury appellant's 17th instruction, which it claimed embraced its theory of defense, and in support of which it had introduced evidence.

From the testimony of the witnesses it appears that at the time of the accident, and for some months previously, it was the custom of the ice company, while unloading its cars of ice, to sell ice from cars standing on the side track of the railway company to such of the public as requested; that large numbers of people crossed over the tracks at the point where the accident occurred every day; that at the time of the accident there were numerous other persons on and about said tracks of the railway company, for the purpose of getting ice.

The switch track was the south one of the several tracks of appellant at that point. Deceased was at the car on the switch getting a small quantity of ice in a bag. Finding it too heavy to carry, he started north across the other railroad tracks to get a small

wagon, in which to take away his ice. While on the tracks he was in some manner struck by the engine in question, and so severely injured that he died only a few days later.

There is some testimony in the record which tends to sustain the contention of appellee that the engine and car were being run at a higher rate of speed than permitted by the ordinance; that no bell was being rung, nor any other warning being given by the company; and that the deceased was rightfully upon the premises, by the invitation of the railway company, upon business in which it was engaged, or which it permitted to be carried on there.

On the other hand, four witnesses on behalf of plaintiff in error testified positively that the rate of speed was only between six and eight miles per hour, and that the whistle was blown and that the bell was being automatically rung.

The trial necessarily involved two questions; First: was the appellant guilty of the negligence set out in the declaration, and was such negligence the proximate cause of the death? Second: Was plaintiff's intestate, at the time of the injury, in the exercise of ordinary care for his own safety?

To authorize a finding for the plaintiff the jury must reach an affirmative conclusion as to both these questions.

The railway company contends both that it was not guilty of the negligence charged against it, and also that deceased was not, at the time of the accident, in the exercise of ordinary care for his own safety. If the proof established either proposition, then the company was entitled to a verdict.

The railway company contended that the deceased was standing at the track next to and north of that on which the train was running, and where (being eight or ten feet away) he was perfectly safe; and that, when the approaching engine was within approximately ten feet from him, he turned and started to

run south across the track on which the engine was approaching; that immediately upon his turning to run south across these tracks, the engineer, who saw him before and at the time he started south, did all he could to stop the engine and avoid injuring him.

In this view of the case, appellant requested the court to give the following instruction:

"17. The court instructs the jury that if you believe from the evidence that when the persons in charge of the engine first came in sight of the deceased, he was so far removed from the track as to be free from the danger of collision, but, as the train approached, he placed himself in a dangerous position, immediately in front of the advancing train, and when it was too late for the engineer to stop the train and avoid a collision, and in so doing, failed to exercise due care for his personal safety, and was struck by the engine and killed, then I instruct you that the plaintiff, his administrator in this case, cannot recover, and your verdict should find the defendant not guilty."

On behalf of appellee, one Clark, the engineer, had testified: "As I got close to him, I should judge 8 or 10 feet, he was standing right on top of the rail, balancing himself on the rail. This rail was north of the one I was on. Just as I got within ten feet of him, he turned and started to run back across the track I was on. He had about the same distance to go as I did, and we met just about the corner of the track."

This instruction embodied the theory of the defense, and, as there was evidence in the case tending to support it, the court erred in its refusal to give it. Keokuk Bridge Co. v. Wetzel, 228 Ill. 253; C. U. T. Co. v. Browdy, 206 Ill. 615; C. U. T. Co. v. Hansen, 125 Ill. App. 157.

For this error of the court, the cause must be reversed and remanded for a new trial.

The views we have just announced render unnecessary any discussion upon other questions raised.

The judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*