Coffey v. Sampsell, 174 Ill. App. 576.

Catherine Agnes Coffey, Administratrix, Appellant, v. Marshall E. Sampsell, Receiver, and Chicago Union Traction Company, Appellee.

Gen. No. 17,419.

1. CARRIERS—*when wagon tongue striking passenger will not raise presumption of negligence.* Where a rapidly moving street car is passing a team of unhitched horses standing between the tracks and the curb with a clear space of one foot between the horses and the car, and the horses become frightened and swing around, the wagon tongue striking a passenger, the accident is due to a cause beyond the control of the company, and a presumption of negligence will not arise.

2. CARRIERS—*when motorman not negligent where wagon tongue strikes passenger.* Where a rapidly moving street car is passing a team of unhitched horses standing between the tracks and a curb with a clear space of one foot between the horses and the car, and the horses become frightened and swing around, the wagon tongue striking a passenger, the motorman is not bound to anticipate the sudden fright of the horses, and there is no evidence of negligence.

Action in case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the Hon. PAUL MC-WILLIAMS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Affirmed. Opinion filed November 29, 1912.

WILLIAM P. BLACK and FRANCIS E. CROARKIN, for appellant.

JOSEPH D. RYAN and FRANK L. KRIETE, for appellees; JOHN R. GUILLIAMS, of counsel.

MR. JUSTICE FITCH delivered the opinion of the court.

In this case the trial court, at the close of plaintiff's evidence, instructed the jury to find the defendants not guilty. A motion for new trial was made and overruled, and judgment entered against the plaintiff for costs. The plaintiff appeals and urges that there was some evidence fairly tending to sustain the averments

Coffey v. Sampsell, 174 Ill. App. 576.

of the plaintiff's declaration, and therefore, the court erred in taking the case from the jury.

The negligence averred in the declaration is the alleged failure on the part of the motorman in charge of one of defendants' street cars, on which the plaintiff's intestate was a passenger, to stop his car or to otherwise make some effort to avoid a collision in passing a team of horses which became frightened by the approach of the car and turned towards it from the curb at which they had been standing unhitched and unattended.

It appears from the evidence (stating the facts in the light most favorable to appellant), that in July, 1907, plaintiff's intestate was a passenger on one of defendants' cars going north on Halsted Street. The car was an open car and crowded, and he was standing on the rear platform. As the car approached Twentieth street several of the passengers (and presumably the motorman), saw a team of horses and an empty wagon standing between the street car tracks and the curbstone on the east side of the street, in front of a restaurant, the horses facing southward and being unhitched and unattended. As the car passed them, the horses became frightened and swung around toward the moving car. The wagon tongue struck the middle of the car, just above the running board, scraped along the side, and plunged into the open space above the rear platform, striking the plaintiff's intestate on the leg and inflicting such injuries as to cause his death the next day. The car was moving rapidly at the time of the accident, and there was some evidence to the effect that the motorman did not lessen the speed of his car on approaching the team; and some evidence to the effect that he even increased the speed as, or just before, the car came opposite the team; but all the witnesses agree that there was at least a foot of clear space between the horses and the car until the horses swung

around, which was after the front part of the car had passed them.

The question thus presented is, whether this evidence "with all the legitimate and natural inferences to be drawn therefrom is wholly insufficient if credited to sustain a verdict for the plaintiff." Lake Shore & M. S. R. Co. v. Richards, 152 Ill. 59, 72; Libby, McNeill & Libby v. Cook, 222 Ill. 206, 210. In the last case (Libby v. Cook, *supra*) it is said (p. 213):

"When a motion for a peremptory instruction is made by the defendant, if the court is of the opinion that in case a verdict is returned for the plaintiff it must be set aside for want of any evidence in the record to sustain it, a verdict should be directed. If the court is of the opinion that there is evidence in the record which, standing alone, is sufficient to sustain such a verdict, but that such a verdict, if returned, must be set aside because against the manifest weight of all the evidence, then the motion should be denied. * * * Where, as here, there is no affirmative defense, the rule applicable may be clearly expressed in these words: A verdict for the defendant should not be directed when there is in the record evidence which fairly tends to prove all the material averments of the declaration. A mere scintilla of evidence in favor of the plaintiff does not justify the court in refusing to direct a verdict, because that quantum of evidence, only, cannot be said to fairly tend to prove any material averment of the declaration."

While it is true that "carriers of passengers for hire, though not insurers of absolute safe carriage, are bound to exercise the highest degree of care, skill and diligence consistent with the practical operation of the road and the mode of conveyance adopted" (Sandy v. Lake St. El. R. Co., 235 Ill. 194, 202), yet "the fact that a passenger on a street car, while exercising ordinary care, was struck by a passing wagon and injured, does not, of itself, raise a presumption of negligence against the street car company." Chicago City Ry. Co. v. Rood, 163 Ill. 477; Chicago Union Traction Co. v. Mee, 218 Ill. 9, 14. If the plain-

tiff's own evidence shows that the accident was due to a cause beyond the control of the defendants, such as "the presence of *vis major,* or the tortious act of a stranger," no such *prima facie* case is made out as will require the carrier to assume the burden of showing that it was not guilty of negligence. (*Ibid.*) In Barnes v. Danville Street Ry. & Light Co., 235 Ill. 566, it was held that the maxim *res ipsa loquitur* "does not apply upon mere proof that an accident to the passenger has happened," but that the evidence must also show that the accident proceeded from an act of such a character "that when due care is taken in its performance no injury ordinarily results from it," or that the accident was caused "by the mismanagement of a thing over which the carrier has either control or for the management or construction of which it is responsible."

In this case the evidence showed that the horses, whose sudden fright caused the accident, were not under the control or management of appellees, but were owned by the Western Packing & Provision Company, and were in the care of its driver who had left them standing at the curb, and who was in the restaurant at the time of the accident; and it appears from the record in this case that the plaintiff has received a considerable sum from said Company for a covenant not to sue it for damages arising out of said accident. The only act of appellees' servant which can be claimed to have been of such a character "that if due care had been taken in its performance" no injury would ordinarily have resulted, is the alleged failure of the motorman to anticipate the sudden fright of the horses, and to operate his car accordingly. In Chicago Union Traction Co. v. Browdy, 206 Ill. 615, where the evidence showed that a horse and wagon were left standing in the street in such a position that a car could safely pass, and remained there until the car was nearly opposite when the driver, without warning, suddenly turned up-

on the track in front of the car, the court said (p. 618):

"It is clear that negligence cannot be imputed to the motorman because he did not stop the car while the horse and wagon were standing near the curb and out of the line of contact with the car. The peril to appellee did not commence and become apparent until he turned upon the track. Then, and not until then, was the motorman required to act. To hold that it was the motorman's duty to stop the car because the horse and wagon were standing near the track, although sufficiently distant to permit the car to pass in safety, would be to impose upon the appellant a duty not imposed upon it by law. * * * To require him to run his car with such caution as to guard against unusual or extraordinary perils would be to require him to so operate his car as to prevent the practical operation of the road."

The same principle was announced in effect in Rack v. Chicago City Ry. Co., 173 Ill. 289, on appeal from a judgment upon a directed verdict for the defendant and certificate of importance granted by the Appellate Court. In North Chicago St. R. Co. v. O'Donnell, 115 Ill. App. 110, the same doctrine was applied to a case in which a passenger was injured by the sudden turning of horses in such a way that the wagon tongue crashed into the vestibule of the car, inflicting injuries which caused the death of a passenger.

Upon the facts shown in this record, and under the authorities above cited, we are of the opinion that there was no evidence fairly tending to prove any negligence on the part of the motorman.

The judgment will be affirmed.

*Affirmed.*