FRANK FUTTER, Plaintiff, Appellee, v. F. W. HOUT, Defendant, Appellee, J. L. LINDSEY, Defendant, Appellant, F. W. HOUT, Cross-Petitioner, Appellee.

No. 44388.

September 20, 1938.

D. M. Kelleher and Horace Melton, for appellee Futter.

Helsell, Burnquist, Bradshaw & Dolliver, for appellee F. W. Hout.

Kirchner & Kirchner and Putnam, Putnam, Fillmore & Putnam, for appellant.

Richards, J.—On March 8, 1937, at about 11 o'clock a. m., plaintiff was riding in an automobile that was being driven westerly by defendant Lindsey on Primary Highway No. 5. At a point on this highway that is about 3 miles west from Ft. Dodge, the automobile mentioned and one that was being driven easterly by defendant Hout came into collision, resulting in physical injuries to plaintiff. He brought this action for damages against both drivers, claiming that their concurrent negligence caused the collision. Against both defendants there was a verdict and judgment. Defendant Lindsey has appealed. The relations of the parties were such that section 5026-b1, Code 1935, has no applicability.

Appellant urges the court erred in submitting to the jury the question of his alleged negligence, and the question whether, if there was such negligence, it was the proximate cause of the accident. Two specifications of the alleged negligence were submitted to the jury, i. e., that appellant was negligent, first,

in driving his automobile at an excessive and illegal speed under the circumstances and conditions then existing, and, second, in failing to have his automobile under reasonable control.

There was testimony from which the jury could have found that the following conditions were existent at the place and the time of the collision: A snow storm was prevailing; a heavy wet snow was falling; there was a wind from the northeast; intermittently the snow was blown in flurries, and in the language of one witness "you had to drive slow in order to see"; as appellant traveled toward the place of the accident the falling snow was clinging to his windshield to such degree that occupants of the car could not see ahead excepting through the lower portion of the windshield where a heater in the car was melting the snow, and through a portion of the windshield where the wiper was working; the snow had been accumulating on the windshield of the Hout car, in traveling several miles easterly towards the place of the accident, and several times Hout had stopped and scraped off the snow and ice which prevented seeing ahead through the windshield; snow, clinging to the windshields of other cars being driven at this time and vicinity, in like manner obstructed vision in the direction the cars were proceeding; the width of the paving on this highway was 18 feet, on each side of which was an earth shoulder; the snow on the highway not only concealed the black line that marked the middle of the paving, but made ascertainment of the location of the paved part of the highway dependent on observing the old weeds on the outside of the concrete, sticking up out of the snow, or the banks of the ditches beyond the shoulders.

From the evidence the jury could have found the following: That the Hout car, when 1,500 or 1,600 feet distant, was seen by the occupants of appellant's car, and at that point was traveling in the middle of the paving as indicated by the location of the weed growth on either side; that from the point 1,500 or 1,600 feet distant the Hout car approached in a northeasterly direction, "angling towards the left," and steadily occupying more of the north side of the pavement; that this direction in which the Hout car was traveling was not altered up to the time the cars collided; that both cars were north of the center of the paving at the instant of the impact; that appellant was driving 60 to 65 miles per hour when the Hout car was seen 1,500 or 1,600 feet westerly from appellant's car; that

appellant continued to maintain this speed as the cars approached each other until the Hout car was 500 or 600 feet distant; that at that point plaintiff said to appellant that the Hout car was on the wrong side of the road; that thereupon appellant pulled his car over to the north, and proceeded with his right wheels traveling on the shoulder, and "let up on the gas", but did nothing else to reduce his speed, applied no brakes, and was traveling not less than 50 miles per hour, when, at a point within about 50 feet of the Hout car, appellant "stepped on the gas" and turned to his left in an effort to pass on the south side of the Hout car; the maneuver failed, the right sides of the two cars contacted, appellant's car rolled over and came to rest on the south shoulder with its front end pointed north; the Hout car remained on the highway at about the place of the collision.

Appellant was examined as a witness in his own behalf. From his testimony the jury could have found the following: That he saw the Hout car when it was a quarter of a mile distant, and continued to observe it as it approached; that from the time the Hout car was approximately 500 or 600 feet distant, it traveled northeasterly and at an angle which would bring it across the north line of the concrete, and if it continued, across the shoulder, and if it continued further, into the ditch; that up to the time of the collision the Hout car at no time straightened up so as to travel in any other than a northeastly direction; that appellant knew that the lines of travel of the two cars would intersect; that from the time the Hout car was 500 or 600 feet away appellant knew he was going to have a collision if the Hout car did not change its course so as to go back to the south side of the road. In appellant's testimony is this:

"At the moment I discovered there was going to be a catastrophe I immediately released the gas—I put my foot on the brake, and eased on that all that I felt I dared to under the conditions."

The portion of the quotation relating to the brakes was controversial, and as already stated there was direct testimony, together with circumstantial evidence, from which the jury reasonably could have found that the brakes were at no time applied.

As we understand appellant's contention, it is that the

trial court should have held, as a matter of law, that plaintiff failed to sustain the burden of proof respecting appellant's alleged negligence, and should have held that it affirmatively appeared that there was no negligence on appellant's part. Appellant says these propositions are sound because he had a right to assume that Hout would yield half the traveled portion of the highway by turning to the right, as the law required, and because appellant had the right to rely entirely on such assumption. The general rule is that, until he knows otherwise, or in the exercise of ordinary care should know otherwise, one using the highway may assume that others also having the use of such highway will obey the law. But when appellant urges that as he proceeded he was justified in relying *entirely* on such assumption, he must be intending to say that the evidence in the case, rather than the rule, justified such entire reliance, because in the rule itself are limitations upon the so-called right to assume, and of course permissible reliance ends whenever under the rule the assumption is interdicted.

In the consideration of the question whether, as a matter of law, the evidence in the case justified appellant in placing entire reliance on the assumption, it is in the record that as appellant was driving towards the Hout car he was assuming that that car would be pulled over to the south half of the road, and it is true that in determining at that time what was due care on his part it was proper that appellant take the assumption into consideration. Knutson v. Lurie, 217 Iowa 192, 251 N. W. 147. But there was also evidence tending to establish that while appellant was so assuming, he was simultaneously conscious of the following facts: That a collision impended if the Hout car continued on its course; that at this time and place wet snow clinging to the windshields was obliterating drivers' vision ahead, except as it was artificially removed; that additionally it was difficult to see through the squalls of falling snow; that the wind was blowing the snow against the windshields of cars proceeding easterly, as was the Hout car; that drivers of cars could not see the black line marking the center of the paving, nor know the location of the paving itself except as was indicated by the weeds on the shoulders, or the banks of the ditches beyond; that the Hout car, already occupying part of the north half of the paving when a quarter mile distant had been continuing steadily upon its northeasterly direction up to the in-

728

stant of the collision. Not only were there these conditions, but the jury also could have found from the testimony that the unusual difficulties in keeping on a proper course, ensuing from these conditions, transcended the ability of Hout, an 80 years old gentleman, to overcome them, though he was attempting to drive on the right side of the highway.

Appellant might assume that Hout would yield half the traveled portion of the highway, and might give proper consideration to the assumption in deciding what was due care on his part, but with the limitation that he might do so only until in the exercise of ordinary care he knew or should know otherwise. On account of this limitation, had it been apparent that it was impossible for Hout to pull over to the south side of the paving, appellant would not have been justified in relying in any degree on an assumption that Hout would do so. Gehlbach v. McCann, 216 Iowa 296, 249 N. W. 144. In the instant case there was not the utter impossibility of obeying the law that is found in the case cited. But we do have Hout's car being driven without aid of the black line marking the center of the paving, with the location of the paving itself determinable only in the indefinite manner described, all in a snow storm blowing in squalls through which one could see not far, and with vision through the windshield nil except as the clinging snow might be artificially removed. A person of usual intelligence, exercising ordinary care, seeing these surrounding conditions, appreciating as he would that they imposed difficulties in the driving of the Hout car that were out of the ordinary, especially as it was proceeding in the direction from which the storm was coming, at least would have taken these conditions into consideration. And such person, as it appears to us, reasonably could have associated these conditions with the manner in which the Hout car was performing, to the extent of finding in the weather and road conditions an explanation and cause for its course. Whether a reasonably prudent person would have so interpreted the situation was, we think, a question for the jury, in view of the whole record. And had the jury found affirmatively on this question, they could well have concluded that such ordinarily prudent person would not have relied *entirely* on a presumption based on the premise that Hout would do something the conditions appeared to be preventing.

If the jury thus found that appellant as a reasonably

prudent person could not rely entirely on the presumption, it seems apparent without extended discussion that it became a jury question whether, though on the right side of the highway, a reasonably prudent person would have driven into the place where he knew the courses of the cars would intersect and the cars collide, at the speed shown, and with no more control of his car than was incidental to such speed. And if the jury found there was negligence on appellant's part, it was clearly a question for the jury whether it was a concurring proximate cause. Miller v. U. P. Ry. Co., 290 U. S. 227, 54 S. Ct. 172, 78 L. Ed. 285; Wright v. C. R. I. & P. Ry. Co., 222 Iowa 583, 268 N. W. 915; Dedina v. C., M., St. P. & P. R. Co., 220 Iowa 1336, 264 N. W. 566.

Appellant further urges that because he was an employee of the state highway department of Iowa and as such employee was engaged on the day of the accident in inspecting bridges, and because his such engagement was the performance of a governmental function, including the driving from bridge to bridge in order to make the inspections, he was immune from liability to plaintiff. The facts before us are such that the recent case of Montanick v. McMillin, 225 Iowa 442, 280 N.W. 608, controls, and sustains the holding of the trial court that appellant was personally responsible for his tortious acts, if any.

Finding no error the judgment is affirmed.—Affirmed.

SAGER, C. J., and HAMILTON, STIGER, MITCHELL, KINTZINGER, MILLER, and ANDERSON, JJ., concur.