[No. 27303. Department One. December 8, 1938.]

FRANK DENNIS, *Appellant,* v. DAN E. MAHER *et al.,* *Respondents.*[1]

[1]Reported in 84 P. (2d) 1029.

*Seltzer & Wheeler,* for appellant.

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* for respondents.

HOLCOMB, J.—Appellant instituted this action to recover damages for personal injuries sustained as the result of a collision between a stage and a motor vehicle, while riding as a passenger in one of respondent Maher's stages. The case was tried to a jury; and after appellant rested, respondents challenged the sufficiency of the evidence to make a case for the jury. A motion for a new trial was made and denied, and thereafter judgment was entered dismissing the action with prejudice.

The amended complaint alleged that Maher, doing business under the firm name of "Interstate Busses," operated a stage line as a public carrier of passengers between Seattle, Washington, and Portland, Oregon; that respondent Hendrick at all times therein mentioned was regularly employed by Maher in the capacity of a stage driver; that, at the time of the collision hereinbefore referred to, the Associated Indemnity Corporation had executed and had on file with the state department of public service a policy of liability and property damage insurance, insuring Maher and any passenger injured on any of his stages through the negligence of Maher or his employees.

It was further alleged that, October 29, 1936, appellant purchased a stage ticket entitling him to be carried as a passenger by respondent Maher from Seattle to Portland; that, on the same day, appellant boarded an Interstate Bus at Seattle; that, when the stage reached a point on the Pacific highway approximately eleven miles south of Olympia, the stage collided with an automobile which was traveling in a northerly direction; that appellant was hurtled from his seat

against the top, sides, windows, and other seats of the stage; that the collision was due proximately and directly to the negligence of the driver of the motor vehicle and to the further negligence of Hendrick, the driver of the stage, in driving it at a grossly excessive rate of speed and with defective brakes, in failing to observe timely the automobile on the wrong side of the road so as to avoid a collision, in failing to sound his horn, and to take cognizance of the congested condition of traffic at that time and place, and to observe signs in that locality cautioning motorists to proceed slowly. The remainder of the complaint particularizes the nature of the injury sustained, the extent of the physical disability, and concludes with a prayer for judgment against respondents.

Respondents answered, denying that the accident was due to any negligence on their part, and set up an affirmative defense alleging that any injuries or damages as alleged were occasioned solely by reason of the negligence of a third party, over whom respondents could exercise no control and for whose acts it was not in any way responsible, and prayed that the complaint be dismissed.

Appellant replied and denied the injuries were due solely to the negligence of a third party and alleged that the negligence of respondents Maher and Hendrick concurred directly and proximately therein.

The record discloses that appellant boarded an Interstate Bus October 29, 1936, in Seattle, intending to go to Kelso to work in a logging camp. The stage proceeded on U. S. Highway 99 to a point approximately ten miles south of Olympia, where the collision hereinbefore described occurred. Appellant was seated alone on the right side of the stage on the next to the last seat. The pavement was dry, and the visibility was good. At the point where the collision occurred, the

road is straight and has a double lane twenty feet wide with level shoulders on each side approximately eight feet in width. There is a line drawn down the center of the road, leaving ten feet on either side of the line. The road was approximately level, with a grade not exceeding three or four per cent.

Four automobiles were coming in a northerly direction on the road as the stage was proceeding south. The third car, a Ford automobile, came out to the left of the line of traffic, apparently intending to pass the other vehicles in front of it, and collided with the stage. The collision occurred in the forenoon between eleven and twelve o'clock. Appellant testified that the stage was traveling at least sixty-five miles per hour, whereas Hendrick, the driver of the stage, stated in his deposition that he was only traveling between thirty-five and forty miles per hour. The impact of the collision rendered appellant unconscious, and the injury sustained by him necessitated his hospitalization for a period in excess of six weeks.

Three errors are assigned, but it is only necessary to consider the correctness of the ruling of the trial court in granting respondents' challenge to the legal sufficiency of the evidence, and the motion for nonsuit.

The testimony relative to whether the stage was proceeding at an unlawful rate of speed was directly conflicting. We are mindful that the testimony indicating the stage was going at an excessive rate of speed emanated from an interested witness. The stage driver stated he left Seattle at 8:30 a. m., whereas appellant testified that the time of departure from Seattle was 9:30 a. m.

A flagman engaged by the state highway department testified that the skid marks of the Ford automobile covered a distance in excess of one hundred feet.

Hendrick stated he noticed the Ford when it was fifty feet away. An engineer was called to testify in regard to the distance required to stop this stage when traveling at a speed of forty miles per hour, and he concluded it would require between fifty and fifty-five feet.

The trial court relied upon *Clark v. King,* 178 Wash. 421, 34 P. (2d) 1105, in support of the conclusion which it reached. It is distinguishable, however, on its facts, because no common carrier of passengers was involved there, and when respondent saw the approaching vehicle he slackened his speed, moved to the right off of the pavement some ten or fifteen feet to avoid a collision, and did everything in his power to avoid the accident.

Under the facts in the present action, however, the slackening of the speed of the stage is not nearly so clear; the stage was on the right edge of the pavement, but did not move much, if any, off of the pavement to the shoulder of the road, and under such circumstances the question of excessive speed cannot be dismissed from consideration. It is necessary to ascertain if the stage was, in fact, proceeding at an excessive rate of speed; and if so, whether that was the proximate cause of the collision.

We have also examined the other cases cited and relied upon by respondents, and find when they are carefully analyzed, that they differ from the present case in several important particulars. Each case of this character must be resolved after a consideration of its own peculiar facts.

It is well established that a common carrier is required to exercise the highest degree of care with respect to passengers. *Connell v. Seattle, etc. R. Co.,* 47 Wash. 510, 92 Pac. 377; *Fleming v. Red Top Cab Co.,* 133 Wash. 338, 233 Pac. 639, and cases cited; *Bradley v. Seattle,* 160 Wash. 100, 294 Pac. 554, and cases cited.

In *Washington v. Seattle*, 170 Wash. 371, 16 P. (2d) 597, 86 A. L. R. 113, we said:

"A common carrier, such as the city in this instance was, is held to the highest degree of care compatible with the practical operation of its buses. That duty would not be met, as a matter of law, by mere observance of the law of the road."

In *Thomson v. Schirber*, 164 Wash. 177, 2 P. (2d) 664, in discussing the duty of a motorist approaching a motor vehicle, which is proceeding on the wrong side of the road, the court observed:

"While, of course, the respondent had the right to assume that the driver of the automobile approaching from the east would exercise due care and steer his car on to that driver's right hand side of the highway, the respondent could not, for that reason, omit any of the care the law required of him. Certainly, the respondent would not be authorized, by reason of the fact that appellants' automobile was on the wrong side of the highway, to run down that automobile. The respondent would be required under such circumstances to exercise the care of a prudent man for the purpose of avoiding an accident.

" 'One driving an automobile along a public highway who sees a car approaching on the wrong side of the road has a right to assume that the driver thereof will observe the law of the road and seasonably turn over to the right, and he may proceed upon this assumption until he sees or, in the exercise of ordinary care ought to see, that his assumption is unwarranted. When the appellant became aware, or in the exercise of ordinary care should have become aware, that an accident was imminent, he was bound to look out for himself and to exercise the care of a prudent man for the purpose of avoiding an accident. Berry on Automobiles (3d ed.), § 785; 29 C. J. p. 651; *Muehlbauer v. Klokner*, 161 Wis. 410, 154 N. W. 624; *Hatch v. Daniels*, 96 Vt. 89, 117 Atl. 105.' "

The question of proximate cause is a mixed question of law and fact, but it is usually a question for the jury,

and only becomes a question of law for the court when the facts are undisputed and the inferences to be drawn from them are unequivocal and incapable of reasonable doubt or difference of opinion. *Hellan v. Supply Laundry Co.*, 94 Wash. 683, 163 Pac. 9; *Thornton v. Eneroth,* 180 Wash. 250, 39 P. (2d) 379, 48 P. (2d) 1120; *Caylor v. B. C. Motor Transportation, Ltd.*, 191 Wash. 365, 71 P. (2d) 162.

It is unnecessary to pass upon the sufficiency of the evidence to support the other allegations of negligence set forth in the complaint; it is sufficient to state that the question of whether or not the stage was proceeding at an excessive and unlawful rate of speed, and whether the stage driver exercised reasonable care under the circumstances in applying his brakes and in not pulling off of the highway to the shoulder of the road, and if either such affirmative action or failure so to act were the proximate cause of the collision, presented questions for the jury.

The trial court erred in granting the challenge to the sufficiency of the evidence and the motion for nonsuit. The judgment is therefore reversed with instructions to grant a new trial.

STEINERT, C. J., MAIN, BLAKE, and MILLARD, JJ., concur.