Argued November 13, 1959, reversed and remanded January 27,
petition for rehearing denied February 23, 1960

# GARLAND *v.* WILCOX
### 348 P. 2d 1091

Seitz, Easley & Whipple, Portland, filed briefs for the appellant Robert Kenneth Garland.

*John L. Luvaas,* Eugene, argued the cause for respondent-cross appellant Robert Edward Garland. On the brief were Luvaas, Cobb & Richards and Dale T. Crabtree, Eugene.

*Windsor Calkins,* Eugene, argued the cause for respondent-cross appellant Gordon Wilcox. On the brief were Calkins & Calkins, Eugene.

Thwing, Jaqua & O'Reilly, Eugene, filed a brief for the respondent Harold Monroe Maddy.

Before McAllister, Chief Justice, and Perry, O'Connell, and Redding, Justices.

## O'CONNELL, J.

This is an action by Roger Edward Garland through his guardian Kenneth Garland to recover damages for personal injuries which he received while riding in an automobile driven by defendant Robert Kenneth Garland, plaintiff's brother. The injuries were suffered as a result of an accident in which the automobiles of defendants Robert Garland, Harold Maddy and Gordon Wilcox were involved.

The jury returned a verdict for defendant Maddy and for plaintiff against the defendants Wilcox and Garland. Defendant moved for a judgment notwithstanding the verdict, which was granted.

Defendant Robert Garland appealed and plaintiff and defendant Wilcox cross appealed. By stipulation the appeal was dismissed as to defendants Maddy and Garland and consequently we are presented only with the issues raised in contest between plaintiff and defendant Wilcox.

The accident occurred on U. S. highway 99 at approximately 9:00 a.m. near Walker, Oregon. The highway was wet. Defendant Maddy was proceeding northerly at a speed of approximately 30 to 35 miles per hour. Defendant Wilcox was proceeding at about the same speed in the same direction, following Maddy's car at a distance of approximately three or four car lengths just before the collision. The Garland car, in which plaintiff was riding, was proceeding southerly. When it was first seen by defendants Maddy and

Wilcox it was rounding a curve at a high rate of speed. Maddy described the scene as follows:

"A Yes. I was a-comin' from the south and comin' around 30-35 miles an hour and I got, oh, 100 feet of this curve and I seen this car start to turn out around the curve to make the curve on his own side. In place of that, he skidded a little, then he got straightened up, then he just come right around in front of me and blocked me. Right square in front of me. I'd moved up a little. I thought I would get him—he wanted to go over the bank but he changed his mind and come right into me.

\* \* \* \* \*

"The Garland car skidded, then he kind of straightened up, and then he come right on across to my side of the road, then he seen where he was at and then he just whirled it like this and started back across and my car hit him right about the back seat.

\* \* \* \* \*

"Q Did you have a chance to gauge his speed as he was approaching?

"A Well, he was going at least 60-65 miles an hour."

Wilcox also saw the Garland car as it proceeded around the curve. He observed that it was going at a high rate of speed and was swerving and skidding so that the rear end of the car was over the center line of the highway. He continued on his course without slackening his speed until the Garland and Maddy cars collided, whereupon he applied his brakes and attempted to turn off the highway when his car was struck by the Garland car. This in general was the manner in which the accident occurred.

■■ Since the trial court entered a judgment notwithstanding the verdict we must examine the evidence

in the light most favorable to the plaintiff. *Clark v. Strain,* 212 Or 357, 319 P2d 940 (1958) ; *United Finance Co. v. Kliks,* 210 Or 288, 310 P2d 1103 (1957) ; *Shelton v. Lowell,* 196 Or 430, 249 P2d 958 (1952) ; *Jensen v. Salem Sand and Gravel Co.,* 192 Or 51, 233 P2d 237 (1951) ; *Edvalson v. Swick,* 190 Or 473, 227 P2d 183 (1951). The evidence viewed in that light would establish that defendant Wilcox saw the Garland car traveling at a high rate of speed as it rounded a curve; he saw the car swerve into the northbound lane of traffic in which he was proceeding; he observed that the car continued in the northbound lane of travel, sliding broadside toward the oncoming Maddy car. The highway was wet. The jury was entitled to believe that the danger created by these circumstances was first known to defendant Wilcox when he was 600 feet away; that he continued toward the scene of danger at a rate of 35 miles per hour, and that he did not apply his brakes until after the impact between the Maddy and Garland cars. More specifically, the evidence was as follows:

Wilcox testified that "At the time I first saw the Garland car it was beginning to broadslide [sic]. * * * The rear end had maybe came—come a foot over the center of the road." From the time that he first saw the Garland car until the impact with the Maddy car the Garland car continued its sliding motion. The following testimony of Wilcox establishes this latter fact:

"Q Well, then, tell us what the car did between the time you first saw it and the first impact.

"A It continued on into the broadslide [sic] into —it was just broad—broadway across the road at which time it was involved in an impact with Mr. Maddy's car."

In spite of the fact that Wilcox saw the Garland car continue to slide sideways into the northbound lane of traffic he did not apply his brakes from the time he saw the Garland car until it collided with the Maddy car. When that collision occurred Wilcox then applied his brakes and attempted to turn to the right. He testified as follows:

"Q Did you ever apply your brakes prior to the accident?

"A Yes.

"Q Before you hit, I mean?

"A Yes, sir.

"Q When?

"A As I started to pull to the right."

Wilcox had testified previously that he had started to pull to the right only after the Maddy and Garland cars had collided. Thus the jury could have concluded that in spite of the fact that from the time Wilcox saw the Garland car 600 feet away and had the opportunity to slow down and turn to the right in order to avoid a possible collision with either of the two cars ahead of him, he elected to proceed into an area of danger involving a risk of harm to the occupants of both of these other cars. Certainly the jury was entitled to regard this as unreasonable conduct under the circumstances.

In numerous adjudicated cases where the facts are more favorable to the defendant than they are in this case, it has been held that the jury is entitled to determine whether the defendant exercised due care under the circumstances. See Annotation: Negligence of Motorist Colliding with Vehicle Approaching in Wrong Lane, 47 ALR2d 7 (1956). The rule may be illustrated by reference to *Robichaud v. St. Cyr,* 150

Me 168, 107 A2d 540 (1954). There the evidence showed that defendant was following a state police car along a wet and slippery highway. Defendant was approximately 100 yards behind the police car. A car coming from the opposite direction rounded a curve and began to skid from side to side on the slippery road. The police car turned off to the side of the road, but defendant continued at his previous speed of approximately 30 miles an hour. The oncoming car crossed the center line and crashed into defendant's car, injuring the plaintiff who was his guest. The court held that these facts presented a jury question as to defendant's negligence. Some of the specific questions which the jury were entitled to consider were set out by the court as follows:

"* * * Was the defendant driver in the exercise of due care under the circumstances? Did the defendant see the skidding car, if it was skidding? Was the road slippery? Was the speed of the defendant's car excessive at the time and under the conditions? Should the defendant have reduced his speed? Should the defendant have stopped, and pulled off the highway as did the police car ahead? Should the defendant have attempted to avoid the oncoming car? Was the oncoming car apparent to the defendant as out of control? If out of control, what should defendant have done that he failed to do, or what should he have ceased to do, whatever he may have been doing? These and many other questions were questions that presented issues for jury consideration." 107 A2d at 542.

In *Gamble v. Lewis,* 227 Ind 455, 85 NE2d 629 (1949), the defendant, while traveling westerly in the proper lane, approached plaintiff's car coming from the opposite direction. Plaintiff's car had swerved into defendant's lane of travel and, in attempting to

avoid a collision, both drivers simultaneously turned to the south, whereupon the cars met and the injury occurred. In describing defendant's duty, the court said:

> "The appellant driver, when she was suddenly faced with the emergency created by the appellee driving on the north side of the road, could have driven off the traveled portion of the highway on the north berm; she could have driven straight ahead in the hope that the appellee would turn to the south in time to have avoided the collision; she could have driven on the south half, as she did; she could have driven completely on the berm on the south side far enough to have missed the appellee when he turned south; and she could have applied her brakes at once in an effort to slow down while pursuing any one of these courses. We cannot say that reasonable men could not differ on which was the reasonable course of conduct for her to follow under all the circumstances of the emergency. Therefore, under the authorities above cited on negligence and proximate cause being a question of fact or law, the question of appellant driver's negligence was one for the jury under proper instructions." 85 NE2d 634.

There are other cases in which it has been held that it is for the jury to decide whether a motorist, upon meeting an oncoming car which is in the wrong lane, has exercised due care in the face of the danger presented. *Hauf v. Pickett,* 140 Conn 169, 98 A2d 818 (1953); *Corey v. Pillips,* 126 Conn 246, 10 A2d 370 (1939); *Bramer v. Ames,* 338 Mich 226, 61 NW2d 160 (1953); *Molnar v. Gordon,* 337 Mich 615, 60 NW2d 485 (1953); *Katlaba v. Pfeifer,* 238 Minn 298, 56 NW2d 725 (1953); *Cole v. Lloyd,* 392 Pa 33, 139 A2d 641 (1958). The duty with which defendant Wilcox was charged may be expressed in the language of *Barr v.*

*The Auto Convoy Company,* 280 P2d 714 (Okla 1955) at page 716, where the court said:

"A motorist has a right to presume that the driver of a vehicle approaching from the opposite direction on the wrong side of the road will obey the law and seasonably return to his right side of the road in time to avoid a collision, until he sees, or ought to see that such assumption is unwarranted. Until he sees that the approaching driver does not intend to turn there is no duty to slacken his speed or change his course. When, however, it is apparent that the approaching driver will not or cannot change his course and turn to his right side there devolves upon the motorist who is on his own right side of the road a duty to use ordinary care to avert the impending collision, that is, that care which appears reasonable in the light of the circumstances in which he finds himself. Potter v. Glassell, 146 La. 687, 83 So. 898. See Annotation 24 A.L.R. 1308."

See also, *Nelms v. Bright,* 299 SW2d 483, 489 (Mo 1957); *Dennis v. Maher,* 197 Wash 286, 84 P2d 1029 (1938; *Thomson v. Schirber,* 164 Wash 177, 2 P2d 664 (1931).

Ordinarily a person is entitled to assume that the driver of an oncoming car will observe the rules of the road. *Wilson v. Bittner,* 129 Or 123, 276 P. 268 (1929). But he is not entitled to make this assumption in the face of circumstances which indicate that it is likely that the rules of the road will not, or cannot, be heeded. In the present case the manner in which the Garland car was moving when Wilcox first saw it was sufficient to warn him that the driver of that car might not be able to return to his own lane of traffic. If the jury should so find, as it could, there would be no basis for an assumption on Wilcox's part that

the rules of the road would be observed by the driver of the Garland car. It is for the jury to decide whether the circumstances warrant that assumption. *Futter v. Hout,* 225 Iowa 723, 281 NW 286 (1938); *Bolton v. Glowaski,* 15 So2d 536 (La App 1943); *Katlaba v. Pfeifer,* supra; *Barnes v. Davidson,* 190 Or 508, 226 P2d 289 (1951).

It follows, therefore, that the lower court erred in granting the motion for judgment notwithstanding the verdict.

We must now consider defendant Wilcox's cross appeal and determine if the verdict is to stand or if the case is to be remanded for a new trial. In his cross appeal Wilcox sets forth the following grounds to support his motion for a new trial.

"1.  Errors in law occurring at the trial and excepted by the defendant Gordon Wilcox.

"(a)  Submission to the jury of the allegation of negligence with respect to speed or the basic rule as to the defendant Gordon Wilcox.

"(b)  Submission to the jury of the allegation of negligence with respect to loss of control as to the defendant Gordon Wilcox.

"(c)  Submission to the jury of the allegation of negligence with respect to the failure of defendant Gordon Wilcox to slow up, stop, or turn to avoid the collision.

"(d)  Submission to the jury of the allegation of negligence with respect to following too close of the defendant Gordon Wilcox.

"(e)  Failure of the Court to instruct the jury with respect to proximate cause as to the defendant Gordon Wilcox when the Court limited its instruction as to negligence only in referring to the allegations

of negligence as to the defendant Gordon Wilcox.

"2. Insufficiency of the evidence to justify the verdict for the reason that there was no proximate cause proved for plaintiff's accident and injury resulting from the alleged negligence of defendant Gordon Wilcox."

None of the foregoing recitations of error are well founded except 1(d). We are of the opinion, however, that the error recited in 1(d), namely, the submission to the jury of the issue of defendant's negligence in following the Maddy car too closely is a ground for setting aside the verdict. The trial court instructed the jury with respect to Wilcox's duty to slow down, turn out or stop in order to avoid colliding with the Garland car. The court then gave the following instruction:

"Now, the defendant Gordon Wilcox is charged that he was following the vehicle of the defendant Harold Monroe Maddy more closely than was reasonable and prudent having due regard to the speed of such vehicles and the traffic upon and condition of the highway.

"I instruct you that a driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent having due regard to the speed of such vehicle and the traffic upon and the condition of the highway. I instruct you further that a violation of this statute would be negligence per se.

"Therefore, if you find by a preponderance of satisfactory evidence that the defendant Gordon Wilcox operated his motor vehicle behind the Maddy vehicle more closely than was reasonable and prudent having due regard to the speed of such vehicle and the traffic upon and the conditions of the highway, and if such fact, if it was a fact, was the proximate cause of the accident, then your verdict

should be for the plaintiff on that phase of the case. However, if you find that the defendant Gordon Wilcox did not violate this provision of the statute, then, of course, your verdict should be for the defendant Gordon Wilcox on that phase of the case."

■■ The duty described in the instruction and in ORS 483.312 is owed not only to those in the car which is being followed too closely, but to others as well, including the occupants of oncoming cars. *Landrum v. Severin,* 37 Cal2d 24, 230 P2d 337 (1951) affirming 224 P2d 30; *Rodriguez v. Savage Transportation Co.,* 77 Cal App2d 162, 175 P2d 37 (1946). The defendant Wilcox had the duty not to follow so closely to the Maddy car as to create an unreasonable risk to the plaintiff. The question is whether there is evidence which causally connects Wilcox's conduct in closely following Maddy's car with the collision with the Garland car. We are unable to find this causal relation. The defendant Wilcox's car collided with the Garland car which had swerved into the defendant's lane of travel. It is possible to conclude that the collision would not have occurred if Wilcox had slowed down, turned out, or stopped when he first saw the signs of danger. But assuming that it could be shown that defendant was following closely, there is nothing in the evidence to show that his close proximity to the Maddy car was in any way related to the cause of the collision. If it had been shown that because of such proximity Wilcox could not see the dangers ahead and as a result the risk of collision with the oncoming car was increased, or that he was forced to turn out into the path of the oncoming car, or that he did not have sufficient space within which to stop and a collision with the preceding car caused it in turn to collide

with an oncoming car, then in such cases, causation would have been established. But there is no evidence in the present case to show that the accident would have happened any differently had the Wilcox car been following Maddy's car at a greater distance. As a matter of fact, there is nothing to show that the accident would not have happened even though Maddy's car was not between Wilcox's and Garland's car.

The cases we have found holding a driver liable to others than the occupant of the preceding car for following too closely all show the causal connection between close proximity and the resulting harm. Thus, it is shown that the following car was so close to the preceding car that when the latter slackened its speed the driver of the following car was unable to stop and, to avoid a rear-end collision, turned out into the path of a car coming from the opposite direction, *Rodriguez v. Savage Transportation Co.,* supra; *Finch v. Carlton,* 249 Ill App 15 (1928); *Hardee v. Nevers,* 10 La App 537, 120 So 227 (1929); *McDonough v. Smith,* 86 Mont 545, 284 P 542 (1930); *Ritter v. Johnson,* 163 Wash 153, 300 P 518 (1931); or that the driver of the following car was so close that his view ahead was obstructed, *Landrum v. Severin,* supra; *Power v. Crown Stage Co.,* 82 Cal App 660, 256 P 457 (1927); or that the rear vehicle was so close that it led the driver of the preceding vehicle into believing she was going to be run over and as a consequence pulled into the path of a passing truck, *Southwestern Freight Lines v. Floyd,* 58 Ariz 249, 119 P2d 120 (1941); or that in stopping suddenly the driver of a following vehicle forced another following vehicle to pull into a lane of oncoming traffic, *Rodriguez v. Savage Transportation Co.,* supra. See also Annotation, 23 NCCA (NS) 367.

In contrast, the defendant's alleged conduct in following closely behind Maddy was not related in any way by the evidence in the record to the collision which followed.

The dissent would have us invade the function of the jury by drawing our own inferences from the evidence. *Sexton v. Kelly*, 185 Or 1, 200 P2d 950 (1948). The calculations set out in the dissent indicating the period of time within which Wilcox had an opportunity to stop may well prove that he was confronted with an emergency, but the jury, properly instructed, must decide that question. Assuming that an emergency existed, it was also for the jury to decide whether the defendant Wilcox's conduct contributed to its creation. *Schutt v. Hull*, 193 Or 18, 236 P2d 937 (1951).

There being error in permitting the jury to consider this aspect of defendant's conduct as negligence, the judgment is reversed and the cause is remanded for a new trial.

PERRY, J., dissenting.

I am unable to concur with the majority upon the proposition that the trial court was in error in granting the defendant's motion for a judgment non obstante veredicto.

I think it must be conceded the majority opinion is grounded upon the assumption there is substantial evidence that the defendant Wilcox observed the approach of the Garland car in which the plaintiff was riding when he was 600 feet distant therefrom and that therefore a jury might find he failed to do that which a reasonably prudent person would have done under the same or similar circumstances.

This assumption, in my mind, is untenable because

there is no substantial evidence upon which such an assumption can be made.

The defendant Wilcox's testimony, which is the only evidence upon this point, is as follows:

"Q  Would you tell me how far you were from this curve when you first saw the Garland car approaching?

"A  I could only estimate between 100 and 200 yards.

\*     \*     \*     \*     \*

"Q  Well, then, you say that when you first saw the Garland car you were from 100 to 200 yards, not feet, south of the curve, is that right?

"A  Yes, sir.

"Q  That would be from 300 to 600 feet?
"A  That's correct."

This could only be interpreted as meaning the defendant Wilcox estimated he saw the approaching Garland car when he was at a distance somewhere between 300 and 600 feet.  This is clear, for he did not say "I saw the Garland car 600 feet ahead."

In *Scarpelli v. Portland Elec. Power Co.*, 130 Or 267, 276, 277, 278 P 99, this court, in discussing evidence relative to distances, stated:

"A mental impression fails to rise to the dignity of admissible testimony if it consists of nothing more definite than a guess or a conjecture: \* \* \*. In order to be admissible a fact should not be so indefinite that no certain and definite inference can be drawn from it: Chamberlayne on Evidence, § 1743.  As a general rule a party is never permitted to put in evidence a fact which does not directly prove the fact in issue, but which is only a step in that direction and from which therefore various indefinite inferences as to the principal fact might be drawn, unless he follows it up with other

accompanying facts which make definite and certain the inferences as to the main fact. * * *"

The majority opinion does not attempt to set forth any other evidence from which even an inference could be drawn that the defendant Wilcox saw the approaching car at a distance of 600 feet.

Defendant Wilcox testified he was following the Maddy car, which first was struck by the Garland car, a distance of three to four car lengths, and Maddy testified he observed the Garland car as it came around the curve 100 feet ahead. In fact, all of the oral testimony of the witnesses, together with the pictures, maps and location of the debris upon the highway, indicates that the Garland automobile must have been much nearer 300 feet than 600 feet away when first observed by the defendant Wilcox.

This court has on many occasions held that purely speculative inferences or conclusions do not constitute substantial evidence which will sustain a verdict or judgment. *Anderson v. Sturm,* 209 Or 190, 303 P2d 509; *Lemons et al. v. Holland et al.,* 205 Or 163, 284 P2d 1041, 286 P2d 656; *Scarpelli v. Portland Elec. Power Co.,* supra.

It seems to me that such an estimate has no probative value; the range of the estimate is so indefinite that in the absence of the evidence which would limit its wide field the jury can only speculate that the distance was 600 feet and not 300 feet.

Keeping in mind this rule of law,—that the evidence to permit a recovery must be substantial and not speculative,—to me it would be entirely unwarranted for any court to permit a jury to speculate upon an estimate of such latitude as to where the defendant was when he first observed the approaching Garland car.

The majority opinion of the court seems to lose sight of the fact that the burden was upon the plaintiff to establish the negligence of the defendant Wilcox, and assumes that there is time in this case for the defendant, faced with an emergency, to act. The law does not require the impossible. This is demonstrated by the decision of this court.

"When there is insufficient time available for reflection, and a judicious choice between methods, the one, who is thus compelled to act in haste, is not liable for an unfortunate result, provided he exercised in the emergency the degree of care generally displayed under like circumstances by the law's standard, a reasonably prudent individual. Under such circumstances the result, if unfortunate, is attributed to an unavoidable accident: Marshall v. Olson, 102 Or 502 (202 Pac. 736); Stabenau v. Atlantic Ave. R. Co., 155 N.Y. 511 (50 N.E. 277, 63 Am. St. Rep. 698); Solatinow v. Jersey City, H. & P. St. Ry. Co., 70 N.J. Law, 154 (56 Atl. 235); Chicago Union Traction Co. v. Browdy, 206 Ill. 615 (69 N.E. 570); 20 R.C.L., Negligence, § 22; 45 C.J., Negligence, § 92, p. 710." *Scarpelli v. Portland Elec. Power Co.,* supra, 130 Or 267, 280.

In the case of *Hamilton v. Finch,* 166 Or 156, 166, 109 P2d 852, 111 P2d 81, we quoted with approval the following from *Rollison v. Railroad,* 252 Mo 525, 541, 160 SW 994:

" 'To predicate negligence on two seconds of time is in and of itself a monumental refinement. We cannot adjudicate negligence on such pulse beats and hair-splitting, such airy nothings of surmise.' "

As shown by the majority opinion, the automobile in which the plaintiff was riding and the automobile driven by the defendant Wilcox were approaching each other at a rate of approximately 100 miles per hour, or about 147 feet per second. If the distance was 300

feet, the defendant had two seconds in which to act, if 600 feet, from four to five seconds. "We recognize that fact of 'reaction time,' that is, the time that elapses 'from the moment one sees danger until he can actually get into action to avoid it.'" *Wiebe v. Seely,* administrator, 215 Or 331, 366, 335 P2d 379.

It is clear from the record, that the negligence of the defendant Robert Kenneth Garland was the primary and dominant cause of the accident and that his negligence created an emergency to be faced by the defendant Wilcox. Therefore, even assuming the defendant Wilcox had five seconds in which to act, I am of the opinion that the emergency doctrine is applicable as a matter of law so as to preclude speculating on whether or not it would have been wiser for the defendant to have stopped his automobile or sooner tried to turn off the road through a ditch six to eight feet deep. *Hamilton v. Finch,* supra; *Havens v. Havens,* 266 Wis 282, 63 NW2d 86, 47 ALR2d 1.

I would affirm the judgment of the learned circuit judge.